IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-00194-D

**Chitarra Herring**,

Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

Defendant.

**Memorandum & Recommendation**

Plaintiff Chitarra Herring instituted this action on March 31, 2014 to challenge the denial of her application for social security income. Herring claims that Administrative Law Judge Ronald Fleming erred in his determination by failing to find that her sleep apnea and obesity were severe impairments, by failing to include all of her reported limitations in the residual functional capacity determination and in the hypothetical questions posed to the Vocational Expert, and by mischaracterizing her activities of daily living. Both Herring and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 16, 18.

After reviewing the parties' arguments, the court has determined that ALJ Fleming erred in his decision. While there is substantial evidence to support ALJ Fleming's finding that Herring's sleep apnea and obesity were not severe impairments, he erred in assessing her limitations when determining her residual functional capacity ("RFC"). Consequently, ALJ Fleming's hypothetical questions posed to the Vocational Expert ("VE") were based on a flawed RFC. Additionally, Herring's reported activities of daily living are not indicative of an ability to

sustain gainful activity. Therefore, the undersigned recommends[1] that Herring's Motion for Judgment on the Pleadings be granted, that Colvin's Motion for Judgment on the Pleadings be denied, and that the court remand the matter to the Commissioner for further proceedings.

## I. Background

On January 25, 2011, Herring filed an application for supplemental security income on the basis of a disability that allegedly began on April 22, 2009. After her claim was denied at both the initial stage and upon reconsideration, Herring appeared before ALJ Fleming for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Fleming determined that Herring was not entitled to benefits because she was not disabled. Tr. at 10–20.

In reaching his decision, ALJ Fleming found that Herring had the following severe impairments: human immunodeficiency virus ("HIV"), depression, and personality disorder. *Id.* at 12. He also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 13. ALJ Fleming determined that Herring had the RFC to perform light work with the following limitations: may perform occasional climbing of ramps and stairs; no climbing of ropes, ladders, or scaffolds; frequent balancing and stooping; and no kneeling or crouching. *Id.* at 15. He further found that she was limited to simple, routine, repetitive tasks not performed in a fast-paced production environment. *Id.* These tasks could only involve simple, work-related instructions and decisions with relatively few work place changes. *Id.* ALJ Fleming concluded Herring was incapable of performing her past relevant work but that, considering her age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing, such as machine tender, production

[1] The court has referred this matter to the undersigned magistrate judge for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

inspector and parking lot attendant. *Id.* at 18–20. Thus, ALJ Fleming found that Herring was not disabled. *Id*. at 20.

After unsuccessfully seeking review by the Appeals Council, Herring commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on March 31, 2014. D.E. 4.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is

equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

**C. Impairment severity**

Herring first contends that ALJ Fleming erred in concluding that her sleep apnea and obesity were not severe impairments. Specifically, she contends that these conditions cause more than a *de minimis* effect on her ability to perform substantial gainful work on a sustained basis. The Government argues that ALJ Herring reached the correct decision because these impairments pose only a *de minimis* effect on her ability to perform work activity.

If the records show a claimant is obese, the ALJ must consider the obesity in each of the subsequent steps of the analysis. Social Security Ruling ("S.S.R.") 02–lp, 2002 WL 34686281, at *3 (Sept. 12, 2002). An individual's Body Mass Index ("BMI") is an appropriate measure of obesity, and a person is considered obese if his or her BMI is 30.0 or greater. *Id*. at *2 ¶ 1. Under Social Security Ruling 02–lp, obesity is an impairment by itself and can also exacerbate the severity of other existing impairments, such as osteoarthritis, hypertension, and depression. *Id*. at *1, *3, *5. "The ALJ must assess the entire record to determine the extent to which obesity imposes functional limitations on a claimant, either alone or in combination with other impairments." *Winston v. Astrue*, 4:11–CV–107–D, 2012 WL 40864448, at *3 (E.D.N.C. Sept. 17, 2012); *see also* SSR 02–1p, 2002 WL 3468628, at *4, *6.

Here, ALJ Fleming noted Herring's BMI of 55.44 caused her to be classified under S.S.R. 02-1p as having Level III obesity. D.E. 14 at 13. Additionally, her treating providers noted that she suffered from obesity. Tr. 317, 319, 321. However, there is no evidence that Herring's obesity, combined with other impairments, meets or equals a listed impairment. S.S.R. 02-1p, at *5. Additionally, "there is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment," *Id.* at *4, despite Herring's argument that her obesity is categorized as Class III and thus the most severe class of obesity. Instead, the ALJ must "do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Id.*

ALJ Fleming noted Herring's obesity and took it into account in reaching his decision. *Id*. Herring's RFC reflects ALJ Fleming's consideration of her obesity because it accounts for postural limitations in climbing, balancing, kneeling, stooping, crouching, and crawling. *Id*. at 15. This satisfies the directive set forth in SSR 02-1p that an ALJ consider the effects of obesity and the extent to which it imposes functional limitations on a claimant.

ALJ Fleming also concluded that Herring's sleep apnea was not a severe impairment. He observed that, following a sleep study, she began using a CPAP machine, which helped her sleep apnea. D.E. 14 at 13. Medical records reflect that Herring reported to her medical care providers that she experienced some improvement in her daytime sleepiness with the use of the CPAP machine. D.E. 14 at 13, 406, 409, 411. These records constitute substantial evidence suggesting that ALJ Fleming's conclusion that the obstructive sleep apnea was not a severe impairment that posed more than a minimal effect on Herring's RFC.

Moreover, even if ALJ Fleming erred by not finding Herring's obesity and sleep apnea to be severe impairments, his error was harmless. The failure to find an alleged impairment severe

at step two is not reversible error where the ALJ considers the alleged impairment at subsequent steps of the analysis. *See, e.g., Winston*, 2012 WL 40864448, at *4 (noting that "[a]n ALJ's erroneous failure to find an impairment . . . severe at step two of the sequential analysis is harmless error if other impairments are found to be severe and the omitted impairment is considered at subsequent steps."); *Atkinson v. Astrue*, No. 5:10–CV–298–FL, 2011 WL 3664346, at *8 (E.D.N.C. July 20, 2011) (citing *Jones v. Astrue*, No. 5:07–CV–452–FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009)), *adopted by* 2011 WL 3664858 (E.D.N.C. Aug. 18, 2011).

As discussed, the record shows that ALJ Fleming considered Herring's obesity and sleep apnea after step two. For instance, as noted above, ALJ Fleming limited Herring in her abilities to climb, kneel, stoop, bend, and squat. The RFC further restricted her to tasks requiring no more than simple, routine, repetitive tasks not to be performed in a fast-paced, production environment and that involve only simple, work-place instructions and decisions. These limitations arguably account for the effects of her obesity and sleep apnea. Because she is unable to establish that ALJ Fleming erred in finding these conditions to be non-severe impairments, Herring's argument on this issue lacks merit.

**D. RFC and hypothetical questions**

Herring next asserts that ALJ Fleming failed to include all of her limitations in his RFC determination and in the hypothetical questions posed to the VE. She contends that her obesity, sleep apnea, shortness of breath, and daytime drowsiness constitute additional limitations which ALJ Fleming should have included in his hypothetical questions to the VE. She further argues that the moderate limitations in her ability to maintain concentration and complete a normal workday or workweek are not covered by a limitation to simple, routine, repetitive tasks or unskilled work, as related by ALJ Fleming in the hypothetical questions to the VE.

ALJ Fleming concluded that the medical evidence did not indicate that Herring's obesity and sleep apnea caused problems that would pose any functional limitations. Tr. at 13. Herring's hearing testimony included a statement that she has a little bit of trouble breathing if she does too much and that she has had trouble breathing with exertional activities such as walking or cleaning. *Id.* at 42–43. However, Herring has not identified shortness of breath as a persistent complaint in the medical evidence of record. Additionally, as noted above, Herring informed her medical treatment providers that her daytime drowsiness improved with the use of a CPAP machine to treat her sleep apnea. *Id.* at 406, 409, 411. Accordingly, while these conditions may have been present, Herring has not identified medical evidence in the record that suggests functional limitations that are more restrictive than those contained in the RFC formulation.

Herring also challenges whether the hypothetical questions presented to the VE sufficiently account for her mental limitations in the ability to maintain concentration, persistence, and pace. The hypothetical questions asked about work available to a claimant limited to "occupations requiring no more than simple, routine, repetitive tasks not performed in a fast-paced environment, involving only simple, work-related instructions and decisions and relatively few workplace changes." *Id.* at 47–48. In response, the VE identified three professions at each a medium exertional level and a light exertional level. *Id*. at 48–49.

In a recent decision, the Fourth Circuit joined the Third, Seventh, and Eighth Circuits and held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). In reaching this holding, the Fourth Circuit reasoned that

"the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*.

The record demonstrates that Herring has limitations in concentration, persistence and pace. Tr. 14, 279–82. Consulting examiner Dr. John Parsley, Psy.D., rendered a Functional Capacity Assessment which found that Herring could perform simple, two-step commands and could maintain concentration and attention for at least two hours at a time. *Id.* at 281. This assessment is additionally informed by Dr. Parsley's Summary Conclusions, which found that Herring had moderate limitations in her ability to understand, remember, and carry out detailed instructions; her ability to maintain attention and concentration for extended periods; her abilities to perform at a consistent pace without rest periods of unreasonable amount and duration; and to complete a normal workday and workweek without interruption from psychologically-based symptoms. *Id*. at 279–80.

The court recognizes that the Summary Conclusions findings in section I of Form 4734 executed by Dr. Parsley are not representative of a claimant's RFC. Indeed, the SSA's Program Operations Manual System ("POMS") explains the function and interpretation of Form SSA–4734 and each of its parts and states that Section I, the "Summary Conclusions," is "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS § DI 24510.060(B)(2)(a). Section III, the "Functional Capacity Assessment," is for recording the mental RFC determination. "It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id*. at (B)(4)(a). Nevertheless, Dr. Parsley's Summary Conclusions found in Section I provide further edification of the mental RFC

he offered, with little detail, in Section III by further explaining the degree of Herring's mental functional limitations. Taken together, these sections present a more comprehensive assessment of Herring's limitations with respect to her ability to maintain concentration, persistence, and pace at issue in the present motion. Despite such limitations, however, other than restricting Herring to simple, routine tasks, ALJ Fleming did not include any limitations related to her ability to maintain concentration and persistence when framing the hypothetical questions to the VE. In light of the *Mascio* decision, this constitutes error.

Moreover, ALJ Fleming's consideration of Dr. Parsley's opinions appears flawed. When weighing the medical opinions, ALJ Fleming references the Psychiatric Review Technique Form ("PRTF") used by Dr. Parsley. D.E. 14, Ex. 7F. The PRTF is used at steps 2–3 to rate impairment severity under paragraph B, and is not used at subsequent steps to formulate the mental RFC. *See* SSR 96-8p.[2]

While summarizing Dr. Parsley's findings in the PRTF, ALJ Fleming failed to explicitly state the weight afforded to that opinion. Tr. at 18; 283–296. The PRTF findings noted mild restrictions in concentration, persistence, and pace. This appears to conflict with not only Dr. Parsley's Mental RFC assessment, which noted moderate limitations in Herring's ability to maintain attention and concentration for extended periods, but also with ALJ Fleming's findings at step two that Herring had moderate difficulties in concentration, persistence and pace. Tr. at

[2] The psychiatric review technique described in 20 C.F.R. §404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

14, 279. As noted above, ALJ Fleming referenced Dr. Parsley's PRTF conclusions, which lacks the more detailed assessment required for a mental RFC determination, to note that Herring had only mild limitations in the first three Paragraph B criteria. However, ALJ Fleming did not properly evaluate Dr. Parsley's opinions as they relate to Herring's mental limitations and their impact on her ability to perform substantial gainful activity. Thus, ALJ Fleming erred in failing not only to state the weight afforded to Dr. Parsley's opinions, but also in referencing his PRTF conclusions, instead of the Functional Capacity Assessment, when formulating the RFC. As Herring has persuasively demonstrated error in the evaluation and consideration of her mental impairments, remand on this issue is appropriate.

**E. Activities of daily living**

Herring further argues ALJ Fleming's conclusion that her activities of daily living were not severely affected by her impairments is not supported by substantial evidence. In his decision, ALJ Fleming found that Herring had only mild restriction in activities of daily living, observing that she could dress and feed herself and that her activity levels did not indicate significant limitations in functioning. Tr. at 14. ALJ Fleming further noted that she had no problems with personal care, that she attends church and visits with others and that she did not require special accommodations at home. *Id*. at 17.

The self-assessment referenced in ALJ Fleming's decision also states that Herring has difficulty cooking, she is no longer able to drive because she may fall asleep, she goes grocery shopping once per month, and that she needs to be accompanied when she goes out of her house. *Id*. at 213–20. Further, at the hearing, Herring testified that she sometimes must have someone help her with self-care, including showering, using the bathroom, and dressing. *Id*. at 36. She

stated that she cannot wash dishes, vacuum, mop, or sweep around the house and that her boyfriend does the grocery shopping. *Id*. at 36–37.

In sum, Herring's activities of daily living are more restricted than indicated by ALJ Fleming's findings. Her ability to perform minimal self-care without assistance is insufficient to support ALJ Fleming's finding that she had only mild limitations in this functional area. A claimant's ability to perform such limited acts of self-care is insufficient to establish that she is capable of greater functioning than she alleges. Similarly, it does not suggest an ability to engage in substantial gainful activity. Although Herring may be able to complete some activities of daily living, it is clear that her overall ability to function is significantly impaired. Thus, ALJ Fleming's finding that the claimant experienced only mild restrictions in her activities of daily living is not supported by substantial evidence. Consequently, remand is warranted for reconsideration of Herring's activities of daily living.

## III. Conclusion

For the forgoing reasons, the court recommends that Herring's Motion for Judgment on the Pleadings should be granted, that Colvin's Motion for Judgment on the Pleadings should be denied, and that the Commissioner's final decision should be remanded for further consideration.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further

evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: July 27, 2015.

Robert T. Numbers II

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE